MORGAN, LEWIS & BOCKIUS LLP
MICHAEL J. LYONS, State Bar No. 202284
DARCY PAUL, State Bar No. 248940
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA  94306-2122
Tel:  650.843.4000
Fax:  650.843.4001
E-mail:  mlyons@morganlewis.com
E-mail:  dpaul@morganlewis.com

Attorneys for Amicus Curiae
LEGAL MOMENTUM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK HAWKE,<br><br>                Petitioner,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>                Respondent. | Case No. C 07-03456 RMW<br><br>**AMICUS CURIAE BRIEF OF LEGAL MOMENTUM**<br><br>Date:  May 23, 2008<br>Time:  9:00 a.m.<br>Ctrm:  6 |

## I. INTRODUCTION

Legal Momentum respectfully submits this brief as *Amicus Curiae* in opposition to Petitioner's attempts to circumvent the confidentiality requirements of Violence Against Women Act ("VAWA") statutes. Legal Momentum is a non-profit advocacy organization that has been closely involved in the process of enacting VAWA legislation and VAWA Confidentiality protections. Congress enacted these laws to ensure that immigration protections for immigrant victims included assurances that information about the existence of a VAWA immigration case and confidential immigration application materials are not disclosed to the abusive spouses of applicants. In this case, Petitioner is accused of criminal battery and seeks disclosure of alleged confidential immigration files which, if they exist, would be protected from disclosure under VAWA confidentiality. Petitioner's request fails because Petitioner has not established that any VAWA application exists. Moreover, even assuming that a VAWA application exists as asserted by Petitioner, he provides no justification for abrogating the confidentiality that Congress mandated to prevent abusers from gaining access to or learning about the existence of VAWA applications.

In particular, Petitioner argues that the alleged VAWA-related application was denied and therefore, falls into an exception to the confidentiality requirements. To the contrary, nothing in the evidence submitted by Petitioner even refers to a VAWA application. Moreover, the letter referring to an application for permanent residency is only described as "denied." Immigrants eligible for VAWA immigration relief and VAWA confidentiality receive the protections conferred by VAWA confidentiality statutes even when the applicant has also filed for other forms of immigration relief the immigrant is eligible to receive. Simply because an application had been rendered moot, it would not be appropriate to strip that application of any of the confidentiality that it would otherwise enjoy under VAWA. Finally, Petitioner has failed to address the possibility that another VAWA application, such as an application to self-petition as a VAWA applicant, may exist which protects all of the requested immigration files from disclosure.

//
//

## II. INTEREST OF THE AMICUS CURIAE

Legal Momentum is the nation's oldest legal advocacy organization dedicated to advancing the rights of women. By helping to create a legal framework that helps immigrant victims of violence against women end the destructive role of violence in their lives, Legal Momentum strives to protect and expand the rights of immigrant women and their children. To help immigrant women improve their lives and future prospects in their new country, Legal Momentum focuses on four core interconnected areas: violence against women, immigration, economic empowerment, and access to justice. Based in part on case studies and field work, Legal Momentum examines and analyzes the roles of immigration, public benefits, and family and criminal laws in the lives of immigrant women.

Victims of domestic violence, sexual assault, trafficking and other crimes are among those who are the focus of Legal Momentum's national efforts to improve access to legal immigration status for immigrant women and children. Through a number of mechanisms, including advocacy with Congress, the Department of Homeland Security ("DHS"), the Department of Justice, Health and Human Services, the Department of Housing and Urban Development, the Department of Education, and the White House, Legal Momentum advocates for regulatory, legislative, and administrative improvements that benefit immigrant women. In the context of immigrant victims of domestic violence, Legal Momentum identifies areas of needed law reform, works with members of Congress to craft legislative solutions, collects stories documenting immigrant women's experiences illustrating the need for change, advocates for passage of favorable legislation, and organizes opposition to provisions that will pose dangers to immigrant women. Legal Momentum then works with federal administrative agencies to help craft policies and procedures that effectively implement the laws for immigrant women and their children.

Starting in 1994 with the Violence Against Women Act ("VAWA"), Legal Momentum has been at the forefront of legislative and administrative advocacy securing legal protections for victims of violence against women. In an effort to improve upon the original VAWA provisions and stop perpetrators of violence against women from using threats of deportation to harm victims, Legal Momentum advocated with Congress to create the VAWA Confidentiality

protections of 1996.  Since the enactment of these initial VAWA protections, Legal Momentum has continued to be involved in advocating for subsequent improvements to VAWA confidentiality protections in the Violence Against Women Act reauthorizations in 2000 and 2005.

### III.  BACKGROUND

The Violence Against Women Act was created in 1994 ("1994 VAWA Act").[1]  In addition to providing certain confidentiality protections for domestic violence victims, the 1994 VAWA Act instructed the Attorney General to study and evaluate the need for additional confidentiality protections.  *See id.* at § 40508.  In 1996, Congress enacted confidentiality requirements for the immigration records of immigrant victims of domestic violence.[2]  Congress expanded upon these protections in the 2000[3] and 2005[4] VAWA reauthorization acts ("VAWA 2000" and "VAWA 2005," respectively).  The VAWA provisions and confidentiality protections discussed herein arise from this group of statutes.

Petitions for relief under VAWA are filed with DHS.  One manner in which an abused immigrant spouse can petition for relief under VAWA is through filing a VAWA application with DHS for the applicant to be designated a "VAWA Self-Petitioner."[5]  If the VAWA Self-Petitioner application is granted, DHS can then grant a request for the applicant to receive an "Adjustment of Status" to permanent resident.  *See* Exh. 2, Form I-485.  The Adjustment of Status application can only be granted if the applicant has already been granted a VAWA Self-Petitioner

---

1. *See* Violent Crime Control and Law Enforcement Act ("1994 VAWA Act"), Pub. L. No. 103-322, 108 Stat. 1796 (1994) § 40153 (Confidentiality of Communications between Sexual Assault or Domestic Violence Victims and their Counselors); § 40281, (Confidentiality of Abused Person's Address); and § 40508, (Report on Confidentiality of Addresses for Victims of Domestic Violence).

2. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"), Pub. L. No. 104-208, § 384; codified at 8 U.S.C. § 1367 (1996).

3. *See* Victims of Trafficking and Violence Protection Act of 2000 ("VAWA 2000"), Pub. L. No. 106-386, Div B, Title V, § 1513(d) (2000).

4. *See* Violence Against Women and Department of Justice Reauthorization Act of 2005 ("VAWA 2005"), Pub. L. No. 109-162, Title VIII, Subtitle B, § 817 (2006).

5. DHS Form I-360 contains an option for an abused immigrant spouse to petition for classification by DHS as the spouse of an abuser, or a "VAWA Self-Petitioner."  *See* Exh. 1, Form I-360, 3.  Filing of a VAWA self-petition Form I-360 triggers protections of an immigrant's DHS information under VAWA Confidentiality provisions.  *See* 8 U.S.C.S. § 1367(a)(2).

1   application. The filing of any VAWA-related application, including a VAWA Self-Petitioner
2   application, triggers protections of an immigrant's DHS information under VAWA
3   Confidentiality provisions. *See* 8 U.S.C.S. § 1367(a)(2) (1996).

4   One of the specific reasons that Congress enacted VAWA Confidentiality protections was
5   to prohibit the disclosure of confidential VAWA immigration application materials to an accused
6   batterer. *See* 151 Cong. Rec.* E2605, E2607 (daily ed. Dec. 18, 2005) (statement of Rep.
7   Conyers) (stating that VAWA Confidentiality provisions "are designed to ensure that abusers and
8   criminals cannot use the immigration system against their victims. Examples include abusers
9   using DHS to obtain information about their victims, including the existence of a VAWA
10  immigration petition, interfering with or undermining their victims' immigration cases, and
11  encouraging immigration enforcement offices to pursue removal actions against their victims.").
12  This intention is explicitly written into the VAWA statutes. *See, e.g.*, 1994 VAWA Act, § 40508
13  (directing the Attorney General to analyze means for protecting the confidential information of
14  "abused spouses to protect such persons from exposure to further abuse"); *see also* VAWA 2000,
15  Pub. L. No. 106-386, § 1502, 114 Stat. 1464, 1518 (stating, "Congress finds that the goal of the
16  immigration protections for battered immigrants included in the Violence Against Women Act of
17  1994 was to remove immigration laws as a barrier that kept battered immigrant women and
18  children locked in abusive relationships").

19  In the present case, Petitioner requests that the Court review the denial by DHS for the
20  production of documents related to the confidential immigration files of Lucia Herrera Hawke
21  ("Lucia"). *See* Petitioner's First Amended Petition, 5:4-11. Petitioner is currently being
22  prosecuted on a felony charge of battery of Lucia pursuant to the California Penal Code. *See id.*
23  at 4:25-28. The reason that Petitioner seeks these confidential immigration files is that he
24  believes that the files may contain information which might assist him in his criminal defense.
25  *See id.* at 2-4.
26  ///
27  ///
28  ///

## IV. ARGUMENT

### A. PETITIONER HAS NOT ESTABLISHED THE EXISTENCE OF A VAWA APPLICATION

Petitioner's request is based upon the contention that there is "overwhelming evidence" to support the existence of a VAWA application. *See* Petitioner's Reply, 3:20. Petitioner states that "Lucia applied for an adjustment of status under the provisions of VAWA. Her application was denied because she had already been granted the status of lawful permanent resident via her joint application with Petitioner during their marriage." *See id.* at 3:11-13. Petitioner's argument primarily relies upon a letter from DHS addressed to Lucia.[6]

The DHS letter, as noted by the Government in its Response, does not make any reference whatsoever to a VAWA application. *See* Government's Response, 4:12-13. Moreover, the testimony of Lucia relied upon by Petitioner does not prove the existence of a VAWA application. First, in the transcript cited by Petitioner, the state court judge presiding over the hearing correctly refuses to entertain discussion of any alleged VAWA application. *See* Petitioner's First Amended Petition, Exh. 3, 71:19-21 ("THE COURT: . . . If it's the Violence Against Women [Act], we're not going there."). Second, Lucia never testified that she filed a VAWA application, and no statement that Petitioner cites supports his assertion that Lucia confirmed that she filed a VAWA application. Third, the time frame that she referenced for the filing of the alleged VAWA application in March or April of 2006 in her quoted testimony does not correspond to the application date of June 13, 2006 alleged by Petitioner to be a VAWA-related application.

Petitioner's demand that the Government confirm the existence of such an application would itself undermine the confidentiality protections of VAWA. Thus, as the Government notes, it can "neither confirm nor deny" the existence of the application. *See* Government's Response, 3 n.2:26-28. To provide Petitioner with any information concerning such an application, if it exists, would undermine the very purpose of the VAWA Confidentiality provisions. The Government must not be compelled to respond in any manner which may reveal

---

6. Petitioner does not explain why he is in possession of a confidential correspondence from DHS addressed to Lucia.

the existence or substance of an alleged VAWA application.

B. **EVEN ASSUMING THE EXISTENCE OF A VAWA APPLICATION, THE CONFIDENTIALITY PROVISIONS OF VAWA WOULD STILL PREVENT DISCLOSURE.**

1. **The Alleged VAWA-Related Application Was Not Denied on Its Merits, but Mooted.**

Even if we assume that Lucia's alleged Adjustment of Status application was based upon VAWA, it was mooted, not denied on its merits. VAWA immigration protections were designed by Congress to allow victims to move forward simultaneously with any immigration case filed by their abusive spouse on the victims' behalf and to file, confidentially, a VAWA self-petition. In this way Congress severed the ability of an abusive spouse to control whether an immigrant victim attained legal immigration status. If the abuser withdrew or sought revocation of the immigration case he filed, the victim would receive lawful permanent residency through her VAWA case.

Petitioner attempts to argue that Lucia filed an Adjustment of Status application and that the letter from DHS is a denial of this application. Petitioner argues that the VAWA confidentiality for Lucia terminated because, by statute, VAWA confidentiality "ends when the application for relief is denied and all opportunities for appeal of the denial have been exhausted." 8 U.S.C.S. § 1367(a)(2) (1996). However, according to the DHS letter, Lucia was not denied, but granted, permanent residency. *See* DHS Letter ("On September 21, 2006 you were granted lawful permanent residency based on the application filed on August 10, 2006."). When DHS granted lawful permanent residency to Lucia, the grounds upon which she was granted that relief does not control whether any VAWA confidentiality protection she is entitled to receive continues. The award of lawful permanent residency to a victim through another immigration case results in DHS not having to finally adjudicate any VAWA case that may have been filed. As a result, according to the letter, Lucia has been granted status as a permanent resident in this country, and her alleged VAWA-related Adjustment of Status application would still be afforded VAWA confidentiality-based protection.

Congress clearly intended to protect the confidential information of VAWA petitioners

1 whose VAWA-related adjustment of status applications were not denied on their merits, but
2 mooted due to permanent residency being granted on other grounds.  In such a situation, the
3 abused immigrants remain in the United States, and the need to "protect such persons from
4 exposure to further abuse" (1994 VAWA Act) and "to remove immigration laws as a barrier that
5 kept battered immigrant women and children locked in abusive relationships" (VAWA 2000) still
6 exists.

7     If Lucia has filed an Adjustment of Status application based upon an approved VAWA
8 self-petition, then the need to protect Lucia from further abuse still exists.  If this Adjustment of
9 Status application exists as asserted by Petitioner, then the protection from further abuse, as
10 contemplated by the VAWA Confidentiality provisions, would be defeated if Petitioner is
11 allowed access to Lucia's confidential immigration files.  Given that Lucia's alleged VAWA-
12 related Adjustment of Status petition was not denied on its merits, but mooted by the granting of a
13 separate application for permanent residency, such an alleged application does not fall under the
14 denial exception.

15         2.    <u>Other VAWA Applications Would Also Prevent Disclosure.</u>

16 Petitioner's request fails to consider the possibility that other VAWA applications may
17 exist which would also trigger VAWA Confidentiality requirements.  For example, in order to
18 grant an Adjustment of Status application as asserted by Petitioner, DHS would first need to have
19 granted a VAWA Self-Petitioner Application.[7]  The documents submitted by Petitioner are
20 consistent with the possibility that Lucia has already been granted status as a VAWA Self-
21 Petitioner.  As a VAWA Self-Petitioner, Lucia's entire immigration file would be already
22 protected under VAWA Confidentiality provisions.  *See* 8 U.S.C.S. § 1367(a)(2) (1996).[8]  Since

---

7. The arguments presented in this section neither confirm nor deny the existence of any VAWA application filed by Lucia. Rather, they are presented under the hypothetical scenario postulated by Petitioner, regarding the evidence that he purports represents a VAWA-related adjustment of status denial.

8. 8 U.S.C.S. § 1367(a)(2) states:
> [I]n no case may the Attorney General, or any other official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other official or employee of the Department of Homeland Security or Department of State (including any bureau or agency of either of such Departments)

1  Petitioner has not identified any exception that could even arguably apply to a granted VAWA

2  Self-Petitioner application, to the extent one exists, the Petitioner's motion must fail.

## V.  CONCLUSION

In enacting the provisions of VAWA, Congress sought to protect battered immigrants by preventing the batterer from gaining access to the confidential immigration files of the person whom he is accused of battering.  In this case, Petitioner has not only failed to produce evidence that confirms the existence of any VAWA application, but has also failed to provide any justification for disregarding the important confidentiality safeguard that would apply to any application that did exist.

---

> permit use by or disclosure to anyone . . . . of any information which relates to an alien who is the beneficiary of an application for relief under paragraph . . . . (51) of section 101(a) of the Immigration and Nationality Act [8 U.S.C.S. § 1101(a)].

8 U.S.C.S. § 1101(a)(51) states, "The term 'VAWA self-petitioner' means an alien, or a child of the alien, who qualifies for relief under . . . clause (iii) . . . . of 8 U.S.C.S. § 1154(a)(1)(A). Clause (iii) of 8 U.S.C.S. § 1154(a)(1)(A) describes the requirements for a VAWA Self-Petitioners application, and it states:

> An alien who is described in subclause (II) may file a petition with the Attorney General under this clause for classification of the alien (and any child of the alien) if the alien demonstrates to the Attorney General that--
> (aa) the marriage or the intent to marry the United States citizen was entered into in good faith by the alien; and
> (bb) during the marriage or relationship intended by the alien to be legally a marriage, the alien or a child of the alien has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse or intended spouse.

| | |
|---|---|
| Dated: May 22, 2008 | Respectfully submitted, |
| | MORGAN, LEWIS & BOCKIUS LLP<br>MICHAEL J. LYONS<br>DARCY PAUL |
| | By: _____/s/_____<br>   Michael J. Lyons<br>   Attorneys for Amicus Curiae<br>   LEGAL MOMENTUM |