1

2

3                                                      E-FILED on _____9/29/2008_____

4

5

6

7

8                 IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

**United States District Court**
**For the Northern District of California**

| | |
|---|---|
| 12  MARK HAWKE, | No. C-07-03456 RMW |
| 13          Petitioner, | |
| 14      v. | ORDER DENYING FIRST AMENDED PETITION |
| 15  UNITED STATES DEPARTMENT OF HOMELAND SECURITY, CITIZENSHIP AND IMMIGRATION SERVICES, | **[Re Docket No. 16]** |
| 16 | |
| 17          Respondent. | |

18

19          Mark Hawke petitions this court to review the Department of Homeland Security's (DHS)

20  denial of his request to produce his wife's immigration records.  DHS opposes the petition.  Mr.

21  Hawke's wife has been apprised of these proceedings, but has not filed any opposition.  *See* Docket

22  No. 18.  The court has reviewed the moving and responding papers and considered the arguments of

23  counsel.  For the following reasons, the court denies the petition.

24                         **I.  BACKGROUND**

25          Mr. Hawke married Lucia Herrera Hawke in April 2005.  *See* Docket No. 16, First Amended

26  Petition (FAP) ¶ 3.  Because Mrs. Hawke's visa had almost expired, Mr. Hawke sponsored her

27

28

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF

**United States District Court**
For the Northern District of California

1  application for a K-1 visa.[1]  *Id.*  Mrs. Hawke appears to have used the K-1 visa and her marriage to

2  Mr. Hawke to apply to become a lawful permanent resident on August 10, 2006, and she became a

3  lawful permanent resident on September 21, 2006.  *See id.* ¶ 6 & Ex. 2.

4         Unknown to Mr. Hawke, Mrs. Hawke had also applied for lawful permanent resident status

5  pursuant to the Violence Against Women Act (VAWA) sometime in March or April of 2006.[2]  *Id.* ¶

6  6 & Exs. 2, 3.  This petition was allegedly based on domestic violence Mrs. Hawke suffered "before

7  immigration."  *Id.* ¶ 7.  The court cannot determine what Mrs. Hawke meant by this testimony.  She

8  may have meant that she had suffered domestic violence prior to coming to the United States or

9  during her marriage to Mr. Hawke but prior to obtaining lawful permanent resident status.  Anyway,

10  Mrs. Hawke concealed this application from Mr. Hawke (hence her second application based on her

11  marriage) because she did not want to tell him about it, though again, it is unclear whether she meant

12  to conceal the application or that she may have been previously abused by another.  *See id.*  DHS

13  denied Mrs. Hawke's first petition under VAWA in December 2006 because she had already become

14  a lawful permanent resident thanks to her second petition based on her marriage to Mr. Hawke.  *Id.* ¶

15  6 & Ex. 2.

16         Petitioner Mark Hawke is now awaiting trial on a single count of misdemeanor battery

17  against his wife.  *Id.* ¶¶ 4-6 & Ex. 1.  The alleged battery occurred on September 26, 2006.  *Id.* ¶ 4 &

18  Ex. 1.  During divorce proceedings in early 2007,[3] Mr. Hawke became aware of Mrs. Hawke's other

19  petition and the possibility that she had previously complained of domestic abuse.  *Id.* ¶ 7.  Mr.

20  Hawke now seeks Mrs. Hawke's prior immigration application because he believes it may contain

21  sworn testimony by Mrs. Hawke regarding the scope of any domestic abuse by Mr. Hawke.  This is

22  relevant because the district attorney has informed Mr. Hawke that the state will present evidence of

23

24  [1]     "A K-1 visa is issued for the sole purpose of facilitating a valid marriage between an alien
and a United States citizen[.]"  *Kalal v. Gonzales*, 402 F.3d 948, 949 (9th Cir. 2005).

25  [2]     The immigration laws define a variety of petitioners as "VAWA self-petitioners."  *See* 8
U.S.C. § 1101(a)(51).  It is unclear what basis Mrs. Hawke claimed for being a VAWA self-

26  petitioner.  One possible basis is that she believed she qualified as an alien who in good faith
married or intended to marry a citizen but was then subjected to domestic violence.  *See* 8 U.S.C. §

27  1154(a)(1)(A)(iii).

28  [3]     The record is silent as to the resolution of any divorce proceedings.  As the parties all refer to
Mr. Hawke's wife as Lucia Herrera Hawke, the court refers to her as Mrs. Hawke.

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF                                                                2

**United States District Court**
For the Northern District of California

1  other acts of domestic violence in its criminal case against him.  *See* FAP Ex. 2.  Mr. Hawke hopes

2  to use any material in Mrs. Hawke's application to impeach or contradict testimony of other acts of

3  domestic violence.  He therefore subpoenaed the Department of Homeland Security's Citizenship

4  and Immigration Services division ("DHS") on April 26, 2007 to produce all of Mrs. Hawke's

5  records and applications.  *See id.* ¶¶ 8, 9 & Ex. 4.

6        DHS responded to the subpoena by letter noting that it would not disclose any information to

7  Mr. Hawke because he had not complied with DHS's administrative procedures for requesting

8  information.  *See id.* Ex. 5.  DHS outlined a number of reasons why it might not produce any

9  information and suggested to Mr. Hawke that he could make a request under the Freedom of

10  Information Act ("FOIA") and enclosed materials to enable him to make such a request.  *See id.*

11        Mr. Hawke's attorneys corresponded with the district attorney expressing frustration that a

12  FOIA request would take over a year to pursue and requesting his help in obtaining Mrs. Hawke's

13  consent to enable DHS to disclose her records.  *Id.* ¶ 11 & Ex. 6.  The district attorney declined to

14  help.  *Id.* ¶ 12.

15        At this point, Mr. Hawke's counsel made a request for Mrs. Hawke's records, but not

16  pursuant to FOIA.  *Id.* ¶ 12.  Mr. Hawke's counsel appears to have believed that a FOIA request

17  would have been futile without Mrs. Hawke's consent.  *See id.*  Presumably, this belief stemmed

18  from FOIA's exception for "personnel and medical files and similar files the disclosure of which

19  would constitute a clearly unwarranted invasion of personal privacy."  *See* 5. U.S.C. § 552(b)(6).

20  That aside, Mr. Hawke sought disclosure of Mrs. Hawke's records from DHS pursuant to its *Touhy*

21  regulations[4] via an "informal request" on October 31, 2007.  FAP ¶ 13 & Ex. 7.

22        On December 7, 2007, DHS denied the "informal request" and suggested that such a request

23  must comply with DHS's *Touhy* procedures for responding to requests for information or be

24  submitted under FOIA.  *See id.* Ex. 8.  Mr. Hawke filed an administrative appeal of the denial of his

25  request (which he no longer referred to as "informal") a week later.  *Id.* ¶ 15 & Ex. 9.  DHS

26

27  [4]     Federal agencies have regulations implementing policies for disclosing information, for
example, in response to a subpoena.  *See Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir. 2001).  These
regulations generally followed the Supreme Court's decision in *Touhy v. Ragen*, 340 U.S. 462 (1951)

28  discussing how the government should respond to requests for information.  DHS's *Touhy*
regulations are codified beginning at 6 C.F.R. § 5.45.

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW

United States District Court
For the Northern District of California

1 responded to the appeal on January 30, 2008 by noting that its *Touhy* regulations do not permit

2 appeals and that "[a]t this stage, the only viable course of action remaining to you on this issue is to

3 seek judicial review of the agency's December 7, 2007, decision in accordance with the

4 Administrative Procedure Act, 5 U.S.C. §§ 101 *et seq.*" *Id.* ¶ 16 & Ex. 10.

5 Following DHS's parting advice, Mr. Hawke filed the pending petition pursuant to the

6 Administrative Procedure Act to obtain an order from this court requiring DHS to produce any

7 documents responsive to Mr. Hawke's original subpoena for this court's *in camera* review and, if

8 appropriate, production of the documents to Mr. Hawke and the district attorney.

## II.   ANALYSIS

10 The parties agree that this court's review is governed by the Administrative Procedure Act

11 (APA), specifically 5 U.S.C. § 706.  More precisely, Mr. Hawke invokes the district court's authority

12 to set aside an agency action that is "contrary to constitutional right, power, privilege, or immunity."

13 5 U.S.C. § 706(2)(B).  While Mr. Hawke's argument is sometimes difficult to follow, he expressly

14 disclaims any argument that DHS's regulations are arbitrary and capricious or that DHS abused its

15 discretion in denying his request for information.  Reply at 1-2.  Instead, Mr. Hawke argues only that

16 DHS's refusal to provide him Mrs. Hawke's immigrations records denies him his constitutional

17 rights, specifically his right to confrontation and right to due process.

### A.   Ripeness

19 DHS first points out that Mr. Hawke has not yet gone to trial, suggesting that his alleged

20 constitutional harms have not yet occurred.  DHS cites to *Mak v. FBI*, 252 F.3d 1089 (9th Cir. 2001)

21 for the proposition that Mr. Hawke's claims that DHS has unconstitutionally withheld information

22 do not become ripe until he has been tried and convicted.  In *Mak*, an assassin was tried, convicted,

23 and sentenced to death for thirteen execution-style murders.  252 F.3d at 1090.  His death sentence

24 was vacated in federal habeas proceedings, and the state sought to retry him to reinstate the death

25 sentence.  *Id.* at 1090-91.  In preparation for the second trial, Mak sought from the FBI the names of

26 two confidential informants.  *Id.* at 1091.  The FBI refused to disclose the confidential informants'

27 identities.  *Id.*  Mak then brought suit under the APA arguing that, among other things, the FBI's

28 refusal to disclose certain information violated his constitutional rights.  *Id.* at 1093-94.  The Ninth

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF                                                                                          4

1  Circuit did not decide whether the federal government must supply information to aid a defendant in

2  state court proceedings, passing on that question and analyzing the right as though it existed.  *Id.* at

3  1093-94.  Doing so, the court concluded that such a right is only violated when "'there is a

4  reasonable probability that, had the evidence been disclosed, the result of the proceeding would have

5  been different.'"  *Id.* at 1094 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Based on

6  the nature of the right, the court observed that Mak's challenge was premature because it could not

7  yet assay the impact of the FBI's refusal to disclose information.  *Id.*  Likewise, the court declined to

8  consider Mak's claim that withholding the informants' identities violated his Eighth Amendment

9  right to present mitigating evidence in the death penalty phase of his trial because he had not yet

10  been convicted and sentenced to death.  *Id.*  By contrast, Mak also claimed that the FBI denied him

11  his Sixth Amendment right to compulsory process by refusing to serve subpoenas on the confidential

12  informants.  *Id.* at 1093.  The court held that this too was premature, but because Mak had not

13  sought or obtained subpoenas for the FBI to serve, not because Mak had yet to be convicted.  *Id.*

14        As mentioned, DHS urges that *Mak* requires a defendant to be tried and convicted before

15  resolving whether the federal government violated his constitutional rights by withholding requested

16  information.  This court disagrees that the holding in *Mak* is so general.  Were it so, the Ninth

17  Circuit would not have needed to analyze the Sixth Amendment claim separately from the other two.

18  Instead, the Ninth Circuit analyzed each constitutional claim and determined when the harm of

19  denying that right occurs.  The court concluded it could not gauge the alleged Fifth and Eighth

20  amendment violations until (and unless) Mak was convicted; therefore, it could not order the FBI to

21  produce the information based on a constitutional violation until then.  Notably, the Ninth Circuit

22  did not use the same justification to find that it could not rule on the Sixth Amendment claim.

23  Applying *Mak* to this case, the court believes it must analyze *when* Mr. Hawke will suffer the

24  alleged constitutional violations, and then determine whether his claims are ripe.

25        **B.      Mr. Hawke's Sixth Amendment Rights**

26        Mr. Hawke characterizes the Sixth Amendment as entitling him to "present an adequate

27  defense" at trial, and that he therefore has the right to obtain materials to allow him to meaningfully

28  cross-examine witnesses.  Mr. Hawke does not sharpen his arguments, but generally invokes his

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF                                                                5

**United States District Court**
For the Northern District of California

1    right to confront witnesses, cross-examine them and serve them with compulsory process, as well as

2    his right to due process.

3        The parties largely confine their argument on this issue to a single case, *Pennsylvania v.*

4    *Ritchie*, 480 U.S. 39 (1987).  The first question raised in *Ritchie* was whether a trial court's refusal to

5    grant a defendant access to information held by a state agency interfered with his Sixth Amendment

6    right to confront witnesses.  *See* 480 U.S. at 51.  Four justices shared the view that "nothing" in the

7    case law supports the view that the Confrontation Clause contains "a constitutionally compelled rule

8    of pretrial discovery."  *Id.* at 52.  Those justices read the Confrontation Clause as providing only "a

9    *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel

10   may ask during cross-examination."  *Id.* (emphasis in original).  Three justices sharply disagreed,

11   writing that the Confrontation Clause does include some constitutional right to access information

12   before trial.  *See id.* at 61-62 (Blackmun, J., concurring in part and dissenting in part); *id.* at 71-72

13   (Brennan, J., dissenting).  Two justices did not reach the issue.  *See id.* at 72 (Stevens, J., dissenting).

14   Surprisingly, this ambiguity regarding the Confrontation Clause brought to light in *Ritchie* has not

15   been resolved.  *See People v. Hammon*, 15 Cal. 4th 1117, 1128-31 (1997) (Mosk, J., concurring).

16   Absent further development in the case law, this court is bound to follow the plurality in *Ritchie* that

17   the Confrontation Clause applies only at trial.

18       The Confrontation Clause is not the only basis for Mr. Hawke's petition though.  Mr. Hawke

19   also invokes the Compulsory Process Clause and his due process rights.  The  Compulsory Process

20   Clause, while similar, is distinct from the Confrontation Clause and confers a separate constitutional

21   right.[5]  In *Ritchie*, the Court could not command a majority to address the question of whether the

22   Confrontation Clause entitles a defendant to certain pretrial discovery, but it did decide the issue of

23   whether the Compulsory Process Clause provides a defendant the right to access those materials.

24   Comparing the Compulsory Process Clause to the Due Process Clause, the Court held that the

25   defendant had the right to have certain information protected by a qualified privilege reviewed by

26

27

28
___

[5]    The distinction is helpfully laid out in Peter Westen, *The Compulsory Process Clause*, 73
MICH. L. REV. 71 (1974).

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF                                            6

United States District Court
For the Northern District of California

1    the trial court, and that the court then had to disclose any relevant information to the defendant. *See*

2    480 U.S. at 55-58.

3    By focusing almost entirely on the Confrontation Clause discussion in *Ritchie*, DHS fails to

4    meaningfully distinguish Mr. Hawke's compulsory process claim from that in *Ritchie*. DHS first

5    misconstrues the Court's analysis in *Ritchie* and by seizing on the Court's brief discussion of the

6    prosecutor's *Brady* obligation to turn over exculpatory evidence. DHS then argues that because it is

7    not the prosecutor, it has no duty to disclose information to Mr. Hawke. DHS misses that neither the

8    prosecution nor the defense possessed the privileged information at issue in *Ritchie*, Pennsylvania

9    Children and Youth Services did. *See id.* at 57. Nothing in the analysis in *Ritchie* turns on whether

10   the entity possessing the information is the prosecutor, and there is no reason to infer such a limit.

11   DHS next argues that Mr. Hawke would only be entitled to "investigative files of the charges

12   against him." To the extent DHS means to suggest that Mr. Hawke is entitled to know the charges

13   against him, the Sixth Amendment has always required that a defendant know the "nature and cause

14   of the accusation." But again, there is no basis for reading *Ritchie* so narrowly, especially since

15   *Ritchie* involved the prosecution's chief witness' file maintained by the Children and Youth Services

16   agency, not the charges against Mr. Ritchie. *See id.* at 43.

17   To recap, Mr. Hawke possesses a constitutional right pursuant to the Sixth Amendment's

18   Compulsory Process Clause and the Fourteenth Amendment's Due Process Clause to obtain access

19   to information held by the government to allow him to mount his defense. *Ritchie*, 480 U.S. at 55-

20   58; *see also United States v. Colima-Monge*, 978 F. Supp. 941 (D. Or. 1997). Unlike the Fifth and

21   Eighth Amendment rights asserted in *Mak*, the court can discern whether Mr. Hawke's constitutional

22   rights have been violated now. This follows from the fact that Mr. Hawke's constitutional right is a

23   *pre-trial* right; it has been violated now regardless of the outcome of the trial. By contrast, the Fifth

24   Amendment right in *Mak* was a *post-trial* right, namely, the right to have received exculpatory

25   evidence that would have been reasonably likely to lead to acquittal. *See Mak*, 252 F.3d at 1094.

26   **C.    Balancing Mr. Hawke's Rights and DHS's Asserted Privilege**

27   In *Ritchie*, the information the defendant sought was protected by a limited privilege. 480

28   U.S. at 57. Accordingly, the Court ordered the trial court on remand to examine the information *in*

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF                                                                          7

*camera* and disclose any relevant information. *Id.* at 57-58. Because the privilege at issue in *Ritchie*

was not absolute, the Court expressly did not reach whether the defendant's constitutional right

could compel the production of documents protected by an absolute privilege. *Id.* at 57 & n.14; *but*

*see Hammon*, 15 Cal. 4th at 1128 (holding that a defendant had no right to pretrial discovery of

privileged psychotherapy records). The court therefore turns to consider the nature of the privilege

asserted by DHS for withholding Mrs. Hawke's information.

Specifically, DHS contends that the Violence Against Women Act prohibits disclosure of

any record that it may or may not have regarding Mrs. Hawke. The law provides that:

> Except as provided in subsection (b) of this section, in no case may the Attorney General, or any other official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other official or employee of the Department of Homeland Security or Department of State (including any bureau or agency of either of such Departments)--
>
> (2) permit use by or disclosure to anyone (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) of any information which relates to an alien who is the beneficiary of an application for relief under paragraph (15)(T), (15)(U), or (51) of section 101(a) of the Immigration and Nationality Act [8 U.S.C.A. § 1101(a)] or section 240A(b)(2) of such Act [8 U.S.C.A. § 1229b(b)(2)].

8 U.S.C. § 1367(a)(2).

Mr. Hawke acknowledges this confidentiality provision, but argues that it does not apply for

two reasons. First, Mr. Hawke notes that the statute "shall not be construed as preventing disclosure

of information in connection with judicial review of a determination in a manner that protects the

confidentiality of such information " 8 U.S.C. § 1367(b)(3). DHS argues that "judicial review of a

determination" refers to judicial review of a VAWA self-petitioner's immigration petition, not any

court proceeding. Mr. Hawke does not refute this argument, and while subsection (b)(3) is vague,

the court agrees that "a determination" refers to the government's determination of a VAWA self-

petitioner's immigration status. The court reaches this conclusion in part because subsection (a)(1)

uses the term "determination" in this limited context. Accordingly, the exception in subsection

(b)(3) does not apply to court proceedings like this one.

Mr. Hawke's second argument is that the confidentiality provision has expired. Mr. Hawke

points out that"[t]he limitation under paragraph (2) ends when the application for relief is denied and

all opportunities for appeal of the denial have been exhausted." 8 U.S.C. § 1367(a). The text of this

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF                                                              8

**United States District Court**
For the Northern District of California

1    provision appears unambiguous, and DHS's only argument that it does not apply is that Mr. Hawke

2    has not satisfactorily shown that Mrs. Hawke's application has been denied.  But Mr. Hawke has

3    included DHS's denial of Mrs. Hawke's petition on the grounds that she already was a lawful

4    permanent resident.  There is also no evidence that she appealed this determination.

5          It is important to note, however, that DHS denied Mrs. Hawke's petition because it was moot,

6    not because she failed to qualify for residency because she did not meet the requirements of the law.

7    To qualify for residency, a VAWA self-petitioner like Mrs. Hawke need only demonstrate that "(aa)

8    the marriage or the intent to marry the United States citizen was entered into in good faith by the

9    alien" and that "(bb) during the marriage or relationship intended by the alien to be legally a

10   marriage, the alien or a child of the alien has been battered or has been the subject of extreme cruelty

11   perpetrated by the alien's spouse or intended spouse."  8 U.S.C. § 1154(a)(1)(A)(iii).  If such a

12   petitioner's application is denied on the merits, it must be because they (a) never intended in good

13   faith to marry the United States citizen or (b) there was no evidence to support the allegations of

14   abuse.  In either of those cases, there is no policy reason to protect the confidentiality of the petition,

15   hence the statutory expiration of the secrecy.  On the other hand, when an application is denied

16   because it is moot, the petition may contain sensitive information that the policy behind VAWA still

17   urges remain secret.  For example, consider a VAWA self-petitioner who after filing her request for

18   lawful residency decides she can no longer live in the same country as her abuser and wishes to

19   return home.  Her decision to stop seeking residency moots her petition.  But her petition remains

20   sensitive, and sound policy dictates that her file should not be disclosed.

21         These illustrations of the purpose behind the language in section 1367(a) compel the court to

22   conclude that when Congress wrote "denied," the word meant "denied *on the merits*."  The text of

23   section 1367(a) harmonizes with this interpretation.  The full provision dictates that the

24   confidentiality expires "when the application for relief is denied *and all opportunities for appeal of*

25   *the denial have been exhausted*."  8 U.S.C. § 1367(a).  But a mooted petition cannot be appealed

26   because there is nothing to appeal.  Congress' focus on the exhaustion of all opportunities for review

27   underscores its intent to limit the expiration of confidentiality to petitions that have been denied on

28   the merits.  This focus on the merits also accords with the fact that the confidentiality never expires

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF                                                                9

**United States District Court**
For the Northern District of California

1  on *granted* petitions filed by the victims of abuse.  To hold that a mooted petition is "denied" would

2  defeat one of the primary purposes of the VAWA confidentiality provision, namely, to prohibit

3  disclosure of confidential application materials to the accused batterer.  *See* 151 Cong. Rec. E2605,

4  E2607 (daily ed. Dec. 18, 2005) (statement of Rep. Conyers that VAWA confidentiality provisions

5  "are designed to ensure that abusers and criminals cannot use the immigration system against their

6  victims").

7      Accordingly, the strict confidentiality of the Violence Against Women Act still applies to

8  any petitions filed by Mrs. Hawke.  While Mr. Hawke's Sixth Amendment right to Compulsory

9  Process permits him access to some information held by the government, it does not permit him to

10  receive absolutely privileged information like any records held by DHS here.

**III.  ORDER**

12      For the foregoing reasons, the court denies Mr. Hawke's petition.

15  DATED:       9/29/2008

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

1    **Notice of this document has been electronically sent to:**

2    **Counsel for Petitioner:**

3    David John Luca                david@lucalaw.com

4

5    **Counsel for Respondent:**

6    Melanie Lea Proctor            Melanie.Proctor@usdoj.gov

7    Counsel are responsible for distributing copies of this document to co-counsel that have not
     registered for e-filing under the court's CM/ECF program.

8

9

10

11   **Dated:**    9/29/2008                              TSF
                                                **Chambers of Judge Whyte**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING FIRST AMENDED PETITION — No. C-07-03456 RMW
TSF                                              11